**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**


PHILLIP E. JAROS              )
                            )
         **Plaintiff,**         )
                            )
vs.                       )      **CIVIL NO. 11-cv-168-JPG**
                            )
GLADYSE TAYLOR, et al.,     )
                            )
        **Defendants.**     )


## MEMORANDUM AND ORDER

**GILBERT District Judge:**


      Plaintiff was at all times relevant to this action housed in the Vandalia Correctional Center.

Plaintiff brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C.

§ 1915A, which provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

     An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke*

*v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Upon careful review of the complaint and any supporting exhibits, the Court finds that the claims in the complaint may be dismissed at this point in the litigation.

**Facts:**

The following version of the facts of this case is gleaned from Plaintiff's complaint (Doc. 1). Plaintiff suffers from a number of health conditions, including: advanced osteoarthritis, avascular necrosis, hip problems, degenerative vertebral issues, interameduliory rod and screw traverse on right knee, a shorter right leg, and tendinitis in his left foot. These issues cause Plaintiff pain and discomfort, and he cannot stand for more than 10 minutes nor sit for longer than 20 minutes due to the pain. Plaintiff was sentenced to a two-year stay in custody for driving while his license was suspended. After entering Vandalia, Plaintiff was provided a metal cane, a low bunk permit, a slow walk permit, and a soft-sole shoes permit, as well as pain relievers prescribed by a prison doctor.

On May 12, 2010, two days after arriving at Vandalia, Plaintiff met with Defendant Harter about his disabilities. Plaintiff informed Defendant Harter, a counselor, that he needed hand rails in the shower and toilet areas, as well as throughout the institution so that he could stop and rest while he walked. Defendant Harter told Plaintiff that Vandalia is not an Americans with Disabilities (A.D.A.) facility, and that he would "just have to deal with it." Plaintiff then asked Defendant Harter to put in a request for Plaintiff's transfer to an A.D.A. facility, but was told that Vandalia did not provide medical transfers, and that he would have to request a normal transfer. Plaintiff attempted to request this transfer, but was told that he could not submit a request until he has been at Vandalia

for at least 6 months and needed at least a year left on his sentence, and that based on the length of his sentence, he did not have enough time left to request a transfer.

On May 18, 2010, Plaintiff filed an emergency grievance with Defendant Meek, complaining that he was unable to shower because the area lacked handrails, and that he had difficulty raising and lowering himself to the toilet, which also lacked hand rails. The next day, Defendant Meek, the former warden of Vandalia, declared the grievance a non-emergency. Plaintiff thereafter submitted the grievance as a non-emergency, which was answered by Defendant Schultze. Defendant Schultze denied the grievance, again stating that Vandalia is not an A.D.A. facility. Plaintiff wrote a letter to Defendant Funk, the transfer coordinator, on June 15, 2010. Plaintiff requested transfer to an A.D.A. facility, or placement in the electronic monitoring program. Both of these requests were denied.

On August 17, 2010, Plaintiff asked the prison doctor whether he had any objections to Plaintiff participating in the work release program. The doctor informed Plaintiff that as long as he took his medication, there shouldn't be a problem. On September 7, 2010, Plaintiff submitted a request to be considered for the work release program. Defendant Harter responded by informing Plaintiff that he had a medical hold, and that his application was thus rejected. Upon learning of the hold, Plaintiff spoke to Defendant Halford, the nurse who had placed the hold. Defendant Halford informed Plaintiff that the hold was in place because Plaintiff used a cane, and it would remain as long as Plaintiff continued to use a cane. Plaintiff then made a formal complaint to the U.S. Attorney, alleging violations of the A.D.A. Plaintiff filed a grievance on September 9, which was initially responded to by Defendant Harter, who informed Plaintiff that he did not meet the criteria for work release because of his condition. Defendant Schultze responded on October 6, 2010, stating

that Plaintiff has no right to the work release program, and that there was no evidence of discrimination. Defendant Dozier, the current warden, concurred with the decision. On September 20, 2010, Plaintiff spoke to Defendant Magnus, the health care unit administrator. Plaintiff requested that the hold be lifted, but this request was again denied.

On October 14, 2010, Plaintiff met with a doctor, who told Plaintiff that he did not see a problem with Plaintiff participating in the work release program, as long as Plaintiff was taking his medication. The doctor made a note of this opinion in Plaintiff's file. The same day, the medical director wrote in Plaintiff's medical record that the hold was lifted, and that Plaintiff was allowed to be considered for work release.

On November 1, 2010, Plaintiff contacted Defendant Olliges, requesting information on the denial of his work release application. Defendant Ollgies informed Plaintiff that his application was denied as "appropriately placed." Plaintiff later attempted to contact Defendant Olliges about his placement and how Plaintiff could appeal the decision, but a response was never received.

**Discussion:**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of FED. R. CIV. P. 8(e) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:        Eighth Amendment**

Plaintiff alleges that Defendants Meek, Harter, Schultze, and Funk violated his right to be

free from cruel and unusual punishment when they refused to accommodate his mobility needs. The Eighth Amendment prohibiting cruel and unusual punishment is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.,* (*quoting Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny -- only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *See Rhodes,* 452 U.S. at 346; *see also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *See McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *See Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement "exceeded contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett,* 17 F.3d 1574, 1579 (7th Cir. 1994). The conditions must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408,

416 (7th Cir 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires that a prison official had a sufficiently culpable state of mind. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

Plaintiff alleges that based on his multitude of health conditions, he has mobility issues of which he made Defendants Meek, Harter, Schultze, and Funk aware. Plaintiff filed a grievance requesting that handrails be installed in the showers, toilets, and throughout the walls of the institution. This grievance was denied by Defendants Meek, Harter, and Schultze. Plaintiff then requested transfer, which was denied by Defendant Funk, leading to Plaintiff remaining in a non-A.D.A. facility. Plaintiff claims that these Defendants' refusals to accommodate him by installing railings or transferring him submitted him to cruel and unusual punishment.

Plaintiff suffers from, among other conditions, hip and joint issues that affect his ability to walk and bend. This causes Plaintiff to have difficulty walking, showering, and using the toilet. These three activities are all daily incidents related to sanitation, the denial of which may be deemed a deprivation of a basic human need sufficient to satisfy the objective requirement of an Eighth Amendment claim. *See Rhodes v. Chapman,* 452 U.S. 337, 346 (1981).

Plaintiff must also show the subjective component: that the Defendants acted, or in this instance failed to act, with the knowledge of a risk to the Plaintiff, and acted with the intent to cause harm. *See Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). Plaintiff has not sufficiently shown that Defendants Meek, Harter, Schultze, Funk, or anyone else in the prison acted with intent to cause harm. When Plaintiff was admitted to the prison, he was provided with a cane, a low bunk pass, a slow walk pass, a soft-sole shoes permit, and pain relievers, all in an attempt to accommodate Plaintiff's health conditions and provide him with the best mobility possible. From these facts, it seems that the Defendants made an effort to care for Plaintiff's needs, and that the denials of prison-wide handrails or a transfer were not made in an effort to prolong Plaintiff's suffering. Further, Plaintiff does not have a constitutional right to hand rails or a transfer. *See Lale v. Raemisch*, No. 09-C-503, 2009 WL 3515858, at *4 (E.D. Wis. Oct. 28, 2009) (lack of handrails in a prison does not amount to an objectively serious condition that raises a constitutional claim) (discussing *Christopher v. Buss*, 384 F.3d 879 (7th Cir. 2004)); *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (States reserve the right to place an inmate in any prison in its system. *Montanye v. Haymes*, 427 U.S. 236 (1976)). This claim for Eighth Amendment violations against Defendants Meek, Harter, Schultze, and Funk is dismissed with prejudice.

**Count 2:       A.D.A. Violations**

Plaintiff next alleges that Defendants Meek, Harter, Schultze, Funk, Halford, Dozier, Magnus, and Ollgies violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. by failing to accommodate his desire to be placed in the work release program and to provide handrails throughout the prison, thus evidencing discrimination.  Title II of the ADA provides that "no qualified individual with a disability shall, because of that disability. . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006).

The Supreme Court has held that the ADA applies to prisons.  In *Pennsylvania Department of Corrections v. Yeskey,* 524 U.S. 206 (1998), the Supreme Court held: "State prisons fall squarely within the statutory definition of 'public entity'. . . . The text of the ADA provides no basis for distinguishing these programs, services, and activities from those provided by public entities that are not prisons." *Id*. at 210.

 The Court further held in *U.S. v. Georgia*, 546 U.S. 151 (2006), that an inmate may bring a private cause of action for damages pursuant to Title II of the ADA *if* the state actor's conduct also violates the Eighth Amendment.  A plaintiff's inability to establish a constitutional violation forecloses an ADA private cause of action.  *See Morris v. Kingston*, 368 F. App'x 686 (7th Cir. 2010).

As stated above, in the instant case Plaintiff has not stated a claim for an Eighth Amendment violation, nor any other constitutional violation in relation to his treatment at the hands of Defendants Meek, Harter, Schultze, Funk, Halford, Dozier, Magnus, and Ollgies.  Because Plaintiff has not stated an Eighth Amendment violation or any other constitutional violations, his claim for

violations of the ADA also fails, and is dismissed without prejudice, so that Plaintiff may bring this claim in State Court, should he so choose.

**Count 3:          Work Release Program**

Plaintiff next alleges that Defendants Harter, Halford, Magnus, Schultze, Dozier, and Ollgies violated his constitutional rights when he was denied placement in the work release program based on a medical hold in his records. The hold on Plaintiff's record was placed there by Defendant Halford because Plaintiff used a cane, and he was informed that while he continued to use the cane the hold would remain. Thus, while Plaintiff used his cane, he remained ineligible for the work release program.

Plaintiff seems to think he has an entitlement to work release, but absent some State law or rule granting this entitlement to Plaintiff or other prisoners, it does not exist and there is no constitutional right to it. *See Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir. 2001). The Seventh Circuit has stated that the Illinois statutes do not create a due process right to work release placement, so that prisoners cannot be said to have a reasonable expectation of obtaining placement in the program. *See Taylor v. Edgar*, 52 F. App'x 825, 826 (7th Cir. 2002); *DeTomaso v. McGinnis*, 970 F.2d 211, 213-14 (7th Cir. 1992) (work-release, more formally described as a transfer to a community correctional center, is a transfer to a low security institution, but is still a prison, and inmates have no more claim to be sent there than they have to avoid commitment to maximum-security institutions).

Prison officials are given much discretion in the placement of inmates, including the decision to place inmates in a work release program. The Illinois regulations governing work release do not limit that discretion, and they therefore do not create liberty or property interests protected by the due

process clause. *Id.*, at 212-13 (construing 730 Ill. Comp. Stat. 5/3-12-1, 5/3-13-2, Ill. Admin. Code tit. 20 § 455.10 et seq). Defendants, therefore, could have denied Plaintiff's request for work release for no reason, or for any reason at all, even if their rationale is based on information that Plaintiff thinks should be irrelevant, or if their decision appears inconsistent with their decisions in other cases. Defendants Harter, Halford, Magnus, Schultze, Dozier, and Ollgies could not have violated Plaintiff's constitutional right to the work release program, because no such right exists. For this reason, this claim is dismissed with prejudice.

**Unspecified Defendants:**

Though Plaintiff lists Defendants Taylor, McConaughy, State of Illinois, and Illinois Department of Corrections in the caption of his complaint, he fails to allege claims against these Defendants elsewhere in his complaint.

The reason that Plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' *Conley v. Gibson*, 355 U.S. 41, 47 (1957)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*,

143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.")

Plaintiff has attempted to state claims against Defendants Taylor, McConaughy, State of Illinois, and Illinois Department of Corrections by simply listing them in the caption of his complaint. As stated above, this does not suffice to adequately put these Defendants on notice of the charges against them. For this reason, Defendants Taylor, McConaughy, State of Illinois, and Illinois Department of Corrections are dismissed from this action without prejudice.

**Pending Motions:**

On March 7, 2011, Plaintiff filed a motion for a temporary restraining order and preliminary injunction (Docs. 2, 9) while he was in the custody of the Illinois Department of Corrections at Vandalia Correctional Center. Plaintiff claims that his motion should be granted because of the ill treatment he is receiving at Vandalia, including the prison's refusal to add handrails to showers, toilets, and the walls of the prison, or to build ramps instead of stairs in the prison, which causes him to suffer great pain and Plaintiff fears will continue to cause harm. However, Plaintiff was released from custody on March 21, 2011 (Doc. 8), so these concerns are no longer valid. The Court therefore **DENIES** the motion for a temporary restraining order and preliminary injunction as moot (Docs. 2, 9).

**Disposition:**

**IT IS HEREBY ORDERED** that Counts 1 and 3 are **DISMISSED** from this action with prejudice. Count 2 is **DISMISSED** from this action without prejudice to Plaintiff bringing this claim in State court should he elect to do so. Plaintiff is **ADVISED** that the dismissal of this action *could* be counted as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g),

but at this time the Court will *not* assess the strike.

Because Plaintiff has failed to state a claim upon which this Court can grant relief, pursuant to 28 U.S.C. § 1915A Plaintiff's complaint is **DISMISSED**.  The Clerk is directed to **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED:   June 13, 2011**

***s/J. Phil Gilbert***
**United States District Judge**