IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PHILLIPE E JAROS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. **3:11-cv-00168-JPG-PMF** |
| | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court is Defendant Illinois Department of Corrections' (Doc. 47) motion for partial summary judgment and Plaintiff Phillipe E. Jaros's (Doc. 54) response thereto. For the following reasons, it is recommended that the (Doc. 47) motion for partial summary judgment be denied.

Jaros filed this lawsuit on March 7, 2011 alleging violations of the cruel and unusual punishment clause of the Eighth Amendment to the U.S. Constitution, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 794–94e ("Rehabilitation Act"). The crux of Jaros' complaint is that prison officials at Vandalia Correctional Center ("Vandalia") ignored his need for placement in an ADA-compliant prison and refused to offer him work-release placement because he walks with a cane. Vandalia is a correctional facility under the control of the Illinois Department of Corrections ("IDOC"), a named defendant in this case. Jaros has since been released from prison and resides in Westmont, Illinois. *See* Doc. 28.

Exercising its screening authority provided under 28 U.S.C. § 1915A, the Court dismissed the case on June 13, 2011, concluding that Jaros failed to state a plausible claim for relief. *See* Doc. 12. Judgment entered on June 14, 2011. *See* Doc. 13. Without obtaining leave of Court, Jaros filed an amended complaint on June 16, 2011.[1] *See* Doc. 14. Jaros appealed the Court's June 13 decision dismissing the original (Doc. 1) complaint on July 12, 2011. *See* Doc. 15. On July 25, 2012, the Seventh Circuit Court of Appeals vacated the Court's June 13 order dismissing the case. *See* Doc. 30 (*decision reported as Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 668 (7th Cir. 2012)). The Seventh Circuit upheld this Court's conclusion that Jaros did not state claims under the Eighth Amendment. *Jaros*, 684 F.3d at 671. Noting that injunctive relief was no longer available due Jaros' release from prison, the Seventh Circuit held that Jaros' ADA claims were barred by the U.S. Supreme Court's decision in *United States v. Georgia*, 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006), which held that the doctrine of sovereign immunity protected states from being sued for money damages under the ADA. *Jaros*, 684 F.3d at 670, 672 n.3. *See also Georgia*, 546 U.S. at 158-60. Finally, the Seventh Circuit explained that the ADA and Rehabilitation Act are largely coextensive, but the Rehabilitation Act has an additional element that permits plaintiffs to seek money damages; receipt of federal funds (which all states accept for their prisons). *Jaros*, 684 F.3d at 671-72. Therefore, the case was remanded for consideration of Jaros' claims for failure to make reasonable accommodations regarding prison meals and shower grab bars (Count 4) and discrimination regarding the work release program

---

[1] Because the amended complaint was filed without leave of court, it is not active. *See* FED. R. CIV. P. 15(a)(2). No provision of Rule 15(a)(1) was applicable that would permit Jaros to file the amended complaint as a matter of course. *See* FED. R. CIV. P. 15(a)(1). The Court's June 13, 2011 order discussed the original (Doc. 1) complaint, and that was the decision that was appealed. The original (Doc. 1) complaint remains active on remand.

(Count 5) under the Rehabilitation Act. *Id*. at 672-73. *See also* Doc. 31. Defendant IDOC is the only remaining defendant in this action. *See* Doc. 31.

IDOC has moved for partial summary judgment (as to Count 5 only) on their affirmative defense of Jaros' failure to exhaust administrative remedies prior to filing this lawsuit. *See* Doc. 47. "A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." FED. R. CIV. P. 56(a). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." *Id*. S*ee also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc*., 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

The Prison Litigation Reform Act ("PLRA") provides as follows:

> (a) Applicability of administrative remedies. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e(a). Accordingly, all prison inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with a lawsuit. *See id*; *see also Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). The Seventh Circuit has taken a strict compliance approach to exhaustion, requiring inmates to follow all grievance rules established by the correctional authority. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The IDOC has a three-step process for non-emergency grievances that prisoners under their jurisdiction are required to follow in order to exhaust administrative remedies. For the first step, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810. At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute. *See id*. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 Ill.Admin.Code § 504.830. The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB"). After receiving a response from the CAO at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. *See* 20 Ill.Admin.Code § 504.850. With regard to prisoners under the control of the IDOC, administrative remedies may usually be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

IDOC argues that it is entitled to judgment as a matter of law on Count 5 (work-release discrimination) because no grievance regarding these allegations was properly exhausted through step 3 of the administrative process (ARB). The only evidentiary support provided by IDOC is the affidavit of Sarah Johnson, Chairperson of the ARB. *See* Doc. 48-1. Ms. Johnson briefly attests to the fact that the ARB did receive a grievance from Jaros regarding work-release, but this grievance was received outside the timeframe for submitting an appeal to the ARB (30 days). *See id*. at 3 ¶ 8. *See also* 20 Ill.Admin.Code § 504.850(a) ("§ 504.850(a)"). Ms. Johnson further states that the ARB returned the grievance to Jaros on November 16, 2010. *See id*. Because the ARB did not address the merits of the grievance, IDOC argues that Count 5 is not fully exhausted and should be dismissed.

Copies of the ARB business records that Ms. Johnson alleges to have located were not provided by IDOC. It is, at the very least, curious as to why the movant to a motion for summary judgment (bearing the initial burdens of production and proof) would include an affidavit describing the business records but not include the records themselves. The absence of these records leaves far too much to be inferred from Ms. Johnson's general statement that Jaros' grievance concerning Count 5 "was returned to him by the ARB on November 16, 2010 as being received past the timeframe in accordance with DR 504." *Id*. From this small fragment of testimony only, IDOC essentially asks the Court to infer that 1) the referenced grievance and letter to Jaros actually exist, 2) the first two steps of the grievance process were available and successfully completed by Jaros, and 3) Jaros received his grievance after completion of step two more than 30 days prior to submitting his appeal to the ARB. Even if the Court could make these inferences from the short statement provided by Ms. Johnson, critical facts would still not be established, such as 1) the date that Jaros received a response a step two of the grievance process and 2) the date that the ARB received the appeal. Without this information, it is impossible for the Court to conclude that administrative remedies were actually available to Jaros at step 3 of the exhaustion process.[2] *See* 42 U.S.C.A. § 1997e(a) (providing that prisoners are only required to exhaust "such administrative remedies as are available" to them). Accordingly, IDOC has failed to meet its initial burden on summary judgment because the evidence provided does not show that it is entitled to judgment as matter of law. *See* FED. R. CIV. P. 56(a).

---

[2] From the evidence provided, the Court has no way of distinguishing whether the denial of the appeal as untimely was appropriate or whether the ARB was arbitrarily denying inmate appeals (thereby making administrative remedies unavailable at step three).

Finally, it is noted that even if the Court could conclude that IDOC met its initial burden on summary judgment, the additional evidence submitted by Jaros would also compel denial of the (Doc. 47) motion as a matter of law. This evidence can be summarized as follows:

1. September 9, 2010: Jaros submits a written grievance to his counselor at step one.
2. September 14, 2010: Counselor denies grievance at step one.
3. October 7, 2010: CAO denies the grievance at step two.
4. November 5, 2010: Jaros submits appeal to the ARB at step three.
5. November 9, 2010: ARB receives appeal at step three.

*See* Doc. 54-1 – 54-3. Reinforcing the conclusion that IDOC failed to meet its initial burden on summary judgment, it is only after consideration of this additional evidence submitted by the non-moving party that can the Court begin to piece together the logic behind IDOC's legal position here. It is now apparent that the IDOC is arguing that it is the *receipt* rather the *submission* of the grievance by the ARB at step 3 that controls for purposes of the 30-day timeframe for appeal provided in § 504.850(a) of the administrative regulations. Accordingly, a narrow question of law is posed as to whether administrative remedies at step 3 of the exhaustion process are made unavailable to a prisoner when the ARB refuses to consider an appeal that was mailed by the prisoner within the 30 day timeframe provided by § 504.850(a) but the ARB does not receive the appeal until after expiration of the 30 day timeframe.

The Court concludes that the plain language of § 504.850(a) compels the conclusion that administrative remedies are made unavailable under the circumstances presented here. The text § 504.850(a) provides as follows:

> If, after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision…

6

20 Ill.Admin.Code § 504.850. The remaining portion of the regulation is silent as to whether the appeal must be received by the ARB prior to expiration of the timeframe for appeal. *See id*. It only requires the prisoner to "appeal… within 30 days after the date of the decision." *Id*. The acknowledgment portion of the offender grievance form that the prisoner signs to appeal the grievance states that, "I understand that this appeal *must be submitted* within 30 days after the date of the [CAO's] decision to the [ARB]." Doc. 54-3 (emphasis added). Nowhere does it state that the ARB must *receive* the appeal prior to expiration of the 30 days in § 504.850. By denying the appeal on the basis that it was untimely (when the appeal was submitted before the 30 day timeframe in § 504.850 but not received until after the 30 day timeframe), the ARB is essentially demanding the prisoner do more than the administrative rules require. This is clearly not permissible. *See, e.g., Glick v. Walker*, 385 F. App'x 579, 583 (7th Cir. 2010) ("The defendants cannot use the exhaustion requirement to demand that an inmate do more than what administrative rules require. *See* [*Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)]; *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).").

## RECOMMENDATION

For the forgoing reasons, it is recommended that the (Doc. 47) motion for partial summary judgment be denied.

If these recommendations are adopted in their entirety, this case will proceed against Defendant IDOC on Counts 4 and 5.

**SO RECOMMENDED.**

**DATED: September 20, 2013.**

*s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE
